# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Danny Morrison,
    Petitioner,

    vs.                                Case No. 1:06cv53
                                          (Spiegel, S.J.; Black, M.J.)

Terry J. Collins, Director of the Ohio Dep't
of Rehabilitation & Corrections, *et al.*,
    Respondents.

## REPORT AND RECOMMENDATION

    Petitioner, who currently is in state custody serving a term of post-release control under the supervision of the Ohio Adult Parole Authority (*see* Doc. 14),[1] has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. This matter is before the Court on the petition; respondent's "Answer" with exhibits, including the trial transcript; petitioner's "Brief In Support Of Petition;" and three additional exhibits, which petitioner has been permitted to file to supplement the record. (Docs. 1, 6, 10, 12; *see also* Docs. 9, 11).

---

[1] Petitioner was incarcerated at the Chillicothe Correctional Institution in Chillicothe, Ohio when the instant action commenced. (*See* Doc. 1). Recently, he was released from prison to serve the term of post-release control. (*See* Doc. 14).

**Factual And Procedural Background**

On August 28, 2002, the Highland County, Ohio, grand jury returned an indictment charging petitioner with one count of illegal manufacture of methamphetamine in violation of Ohio Rev. Code § 2925.04 (Count One); one count of illegal assembly or possession of chemicals that may be used to manufacture methamphetamine in violation of Ohio Rev. Code § 2925.041 (Count Two); and one count of possession of criminal tools in violation of Ohio Rev. Code § 2923.24 (Count Three). (Doc. 6, Ex. 1).

After a jury trial, petitioner was found guilty as charged in Counts One and Three of the indictment, and was acquitted on the illegal assembly or possession of chemicals charge contained in Count Two. (*Id.,* Ex. 3). On June 2, 2003, petitioner was sentenced to consecutive terms of imprisonment of four (4) years for the illegal manufacture of drugs offense, and six (6) months on the possession of criminal tools charge. (*Id.,* Ex. 4).

With the assistance of counsel from the Ohio Public Defender's Office, petitioner timely appealed to the Ohio Court of Appeals, Fourth Appellate District. In addition to presenting assignments of error challenging the imposition of consecutive sentences and monetary penalties on petitioner, who is indigent, petitioner claimed in two other assignments of error that his trial counsel was ineffective as follows: (1) he "failed to seek suppression of evidence obtained during an illegal search of [petitioner's] backyard;" and (2) he failed "to object to evidence of a marijuana pipe located in [petitioner's] bedroom [that had] nothing to do with the crimes charged." (*Id.,* Ex. 6).

On October 22, 2004, the Ohio Court of Appeals overruled the two assignments of error challenging trial counsel's performance in failing to file a suppression motion and failing to object to the admission of the marijuana pipe, and affirmed the judgment of conviction.[2] (*Id.,* Ex. 9). However, the court sustained the assignments of error challenging the imposition of consecutive sentences and monetary penalties, and the matter was remanded for re-sentencing

---

[2] One of the appellate judges on the three-judge panel dissented in part to the extent that he would have sustained the assignment of error challenging trial counsel's failure to file a suppression motion and would have remanded the case to the trial court for hearing on a motion to suppress. (*See* Doc. 6, Ex. 9, p. A-16).

to concurrent terms of imprisonment totaling four (4) years, with the additional provision that the $7,500.00 "mandatory fine is hereby waived as the Defendant is indigent." (*Id.*; *see also id.,* Ex. 5).[3]

In its "Decision & Judgment Entry," the Court of Appeals also made the following findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[4] regarding the events that resulted in petitioner's indictment and conviction:

> On July 25, 2003, Highland County Sheriff's Deputies were searching for Craig Dawson. The authorities were armed with an arrest warrant for Dawson. Officers had observed Dawson with Rick Shinkle, but soon lost visual contact. Soon, officers located Shinkle's vehicle in a wooded area behind the appellant's residence. Officers then proceeded to the appellant's residence to search for Dawson.
>
> Detective Daniel Croy received no response when he knocked on the appellant's mobile home door. The officers then walked to the rear of the residence and immediately noticed a strong odor of ether, a methamphetamine reagent, in the air. Officers also heard voices emanating from the wooded area. The officers soon noticed a horseshoe pit and a blue trash barrel. The barrel contained an altered propane tank that appeared to have contained anhydrous ammonia, another methamphetamine reagent. Also, officers observed nearby other items commonly associated with methamphetamine manufacture. The officers then secured the scene and obtained and executed a search warrant.

---

[3] Petitioner was re-sentenced by the trial court pursuant to the Ohio Court of Appeals' instructions on December 30, 2004. (*See* Doc. 6, Ex. 5).

[4] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

(*Id.,* Ex. 9, p. A-3).

Petitioner's appellate counsel filed a timely application for reconsideration under Ohio R. App. 26(A) with the Ohio Court of Appeals. (*Id.,* Ex. 10). Counsel argued that the court had erred "in its application of the law and misapprehended the facts contained in the record" in overruling the ineffective assistance of counsel claim based on trial counsel's failure to file a suppression motion; counsel also alternatively requested that the case be remanded for an evidentiary hearing on that claim. (*See id.*). On December 6, 2004, the Court of Appeals issued a seven-page Entry denying the application for reconsideration. (*Id.,* Ex. 11).[5]

On November 29, 2004, while petitioner's motion for reconsideration was pending before the Ohio Court of Appeals for ruling, petitioner's counsel also filed a timely appeal to the Supreme Court of Ohio from the Court of Appeals' direct appeal decision. (*Id.,* Ex. 12; *see also id.,* Ex. 9, attached "Docket Sheet"). In one of the two propositions of law set forth in the memorandum in support of jurisdiction, petitioner claimed, as he had on direct appeal, that he was deprived of his Sixth Amendment right to the effective assistance of counsel when his trial attorney (1) failed to file a "motion seeking the suppression of evidence illegally obtained during an unconstitutional intrusion onto and search of the accused's home and property," and (2) failed "to object to prejudicial other act evidence." (*Id.,* Ex. 12).

On February 16, 2005, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 14).

The same attorney from the Ohio Public Defender's Office who represented petitioner in the state appeal proceedings filed the instant federal habeas corpus petition on petitioner's behalf on January 31, 2006. (Doc. 1).

---

[5] It appears from the record that petitioner did not appeal this decision to the Supreme Court of Ohio.

4

>Petitioner alleges in his one ground for relief the following claims:
>
>Trial counsel rendered constitutionally ineffective assistance, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, based on trial counsel's failure to file a meritorious motion to suppress evidence obtained during an unconstitutional intrusion onto and search of [petitioner's] home and property, and based on trial counsel's failure to object to the admission of irrelevant and prejudicial other-act evidence.

(*Id.,* p. 4).

In the "Answer" filed in response to petitioner's allegations, respondent concedes that the petition is not barred from review on statute of limitations grounds and poses no exhaustion or waiver concerns.[6] (*See* Doc. 6, Brief, pp. 6-7).

On the merits, respondent contends that petitioner is not entitled to relief under the applicable standard of review set forth in 28 U.S.C. § 2254(d), because the state courts' adjudication of the ineffective assistance of trial counsel claims alleged in the petition neither is contrary to nor involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court, and is not based on an unreasonable determination of the facts in light of the record evidence. (*Id.,* pp. 7-24).

---

[6] The Ohio Court of Appeals indicated in its direct appeal decision that the remedy of a post-conviction proceeding might be available to petitioner to the extent the record is "undeveloped" and "inconclusive" as to one of petitioner's claims of a Fourth Amendment violation that should have been challenged by his trial counsel in a suppression motion. (Doc. 6, Ex. 9, pp. A-10-A-11). However, as petitioner's counsel argued in the subsequent motion for reconsideration filed with that court, and as respondent contends in the "Answer," to require petitioner to pursue the state post-conviction remedy would be futile at this late juncture. Under Ohio Rev. Code § 2953.23, a post-conviction petition filed beyond the prescribed time period will not be entertained except in limited circumstances that do not apply to the case at hand. (*See* Doc. 6, Brief, p. 6 & Ex. 10, p. 3).

# OPINION

## Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective Assistance Of Trial Counsel Claims Alleged In The Petition

As respondent has pointed out in the "Answer" (*see* Doc. 6, Brief, pp. 7-9), under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his ineffective assistance of counsel claims resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942; *see also Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005).

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's ineffective assistance of counsel claims, which were raised on direct appeal. Before turning to the specific claims of error alleged by petitioner, the court cited *Strickland v. Washington,* 466 U.S. 668 (1984), as providing the applicable standard of review wherein "in order to obtain reversal of a conviction on grounds of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial." (Doc. 6, Ex. 9, p. A-4).

Thereafter, the Ohio Court of Appeals went on to summarily reject petitioner's claim "that trial counsel should have objected to the mention of a marijuana pipe and should have requested a curative instruction for the jury." (*Id.,* pp. A-11-A-12). The court found that the alleged error constituted "a tactical decision by trial counsel" to not "unduly emphasize or stress the importance of irrelevant evidence." (*Id.,* p. A-12). Moreover, the court pointed out that although trial counsel failed to object to the evidence, he did elicit testimony from a State witness on cross-examination that "nothing related to methamphetamine was found in [petitioner's] house and that the marijuana pipe was not used for methamphetamine production." (*Id.*).

The court was more troubled by petitioner's claim stemming from trial counsel's failure to file a suppression motion, and focused most of its discussion on that issue. The court began by pointing out that both petitioner and the State

7

agreed that "in order to prevail on an ineffective assistance claim under the Fourth Amendment, a defendant must establish that counsel's failure to file a motion to suppress would have a reasonable probability of success and caused him prejudice." (*Id.,* p. A-5). Citing Supreme Court cases addressing issues arising in the Fourth Amendment context, the court continued:

> There is no doubt that the Fourth Amendment . . . guarantees the right of people to be secure in their persons, houses and effects against unreasonable searches and seizures. This means that the State is prohibited from making unreasonable, warrantless intrusions into areas where people have legitimate expectations of privacy. . . . It is also well settled that such protection does not extend to "open fields" outside the home. . . . The "open fields" doctrine does not, however, apply to the "curtilage" of the property - or the land immediately surrounding and associated with the home. . . . Factors to consider when determining whether an area is protected curtilage are: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by....

(*Id.,* pp. A-6-A-7) (Supreme Court case citations omitted).

The court noted that "[i]n the case at bar, the appellant asserts that the officers conducted a warrantless search of areas within the appellant's curtilage." (*Id.,* p. A-7 n.1). Focusing its attention only on the blue trash barrel containing the altered propane tank, which was noticed by police officers when they walked to the rear of petitioner's mobile home in search of Craig Dawson, the court found that "the evidence adduced at trial concerning the barrel's location is simply too scant and imprecise to make a determination whether the barrel was located within the curtilage of the property, and thus protected by the Fourth Amendment, or whether the barrel was located in 'open fields,' and thus outside appellant's constitutional zone of privacy."

(*Id.,* pp. A-8-A-9).[7]

In support of this finding, the court cited the following conflicting trial testimony as it related to the proximity of the trash barrel to petitioner's residence:

> At trial, Sergeant Chris Bowen testified that the barrel was "50 yards from the residence . . . ." Deputy Daniel Croy testified that the barrel was "25 or 30 feet from the trailer." Appellant testified that the barrel was ten to twenty feet on the other side of the horseshoe pit, and that the horseshoe pit was "probably" ten feet from the mobile home (thus making the barrel, if we correctly understand this testimony, anywhere from twenty to thirty feet from the residence).

(*Id.*, p. A-9).

The court stated that it was sympathetic to petitioner's "predicament" as "enough red flags exist in this case to warrant the filing of a motion to suppress." (*Id.,* p. A-10). However, in the absence of evidence "firmly establish[ing] the barrel's location and the nature of the surrounding property," the court determined that "until such time that a more conclusive record of the evidence is developed," possibly by way of a post-conviction relief proceeding, it could not find under the "prejudice" prong of the *Strickland* standard that a "reasonable probability exists that a motion to suppress evidence would have been granted." (*Id.,* pp. A-10-A-11).

As an initial matter, the Ohio Court of Appeals correctly cited and applied the two-part standard of review established in *Strickland* for evaluating ineffective assistance of counsel claims. *See also Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986) (involving ineffective assistance of counsel claim based on failure to file a suppression motion alleging a Fourth Amendment violation). As the state appellate court recognized (*see* Doc. 6, Ex. 9, p. A-4), in order to establish a Sixth

---

[7] In addressing the additional evidence of a "meth lab" that was found "in the woods behind petitioner's property," the Ohio Court of Appeals noted that even "if the barrel was arguably within appellant's curtilage, we question how the wooded area would be curtilage," particularly in light of petitioner's testimony that "other people frequented that area for fishing" and that "the area where they found the 'stuff' was not even his property." (Doc. 6, Ex. 9, p. A-9 n.2).

9

Amendment violation under *Strickland*, the petitioner must demonstrate: (1) his attorney made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland,* 466 U.S. at 687; *see also Kimmelman,* 477 U.S. at 381.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See Strickland,* 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate a "reasonable probability" exists that, but for his counsel's deficient conduct, the result of the trial and appeal proceedings would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of his trial would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

Here, as the Ohio Court of Appeals reasonably determined in addressing petitioner's claim challenging his trial counsel's failure to object to "other acts" evidence, petitioner has not shown that the challenged conduct fell below an objective standard of reasonableness or prejudiced the defense under the applicable two-part *Strickland* standard. Upon review of the lengthy trial transcript, it appears only four brief references were made to the marijuana pipe found in petitioner's residence. (*See* Tr. 99, 110, 192, 276). Three of these references were elicited on questioning by defense counsel to emphasize that no evidence was found during

the search of petitioner's home connecting petitioner to the use or production of methamphetamine, and indeed to show that petitioner was not involved in any such activity, which was the subject of the indictment. The remarks were passing, and it is highly unlikely they had a prejudicial impact on the jury's verdict in this case.

With respect to petitioner's second ineffective assistance claim stemming from trial counsel's failure to file a suppression motion, the undersigned is not as troubled as the Ohio Court of Appeals was about counsel's conduct or the lack of a conclusive record regarding the location of the blue trash barrel in evaluating the merits of such claim.

Where, as here, the ineffective assistance of counsel claim is based on counsel's failure to raise Fourth Amendment issues, the petitioner must show that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice" under the second prong of the *Strickland* test. *Kimmelman,* 477 U.S. at 375; *see also Mosby v. Senkowski,* 470 F.3d 515, 519 (2nd Cir. 2006), *petition for cert. filed,* No. 06-11128 (U.S. Apr. 27, 2007).

As the Ohio Court of Appeals recognized in adjudicating petitioner's ineffective assistance of counsel claim, the Fourth Amendment protects individuals from unreasonable searches and seizures, which is "not limited to the four walls of one's home, but extends to the curtilage of the home as well." *United States v. French,* 291 F.3d 945, 951 (7th Cir. 2002); *see also United States v. Dunn,* 480 U.S. 294, 300-01 (1987); *Oliver v. United States,* 466 U.S. 170, 180 (1984) (reaffirming holding in *Hester v. United States,* 265 U.S. 57 (1924), that Fourth Amendment protections do not extend to "open fields" where "no expectation of privacy legitimately attaches"). "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver,* 466 U.S. at 180 (quoting *Boyd v. United States,* 116 U.S. 616, 630 (1886)). Similarly, for Fourth Amendment purposes, curtilage is defined "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.*

As the Ohio Court of Appeals further recognized, the Supreme Court held in *Dunn* that "curtilage questions should be resolved with particular reference to four

11

factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Dunn,* 480 U.S. at 301. These factors do not comprise a bright-line rule, but rather are to be considered "only to the degree that, in any given case, they bear upon the centrally relevant consideration–whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

Therefore, contrary to the Ohio Court of Appeals' focus on only the "proximity" factor discussed in *Dunn*, a "curtilage line is not necessarily the property line, nor can it be located merely by measuring the distance separating the home and the area searched." *French,* 291 F.3d at 951 (citing *United States v. Redmon,* 138 F.3d 1109, 1112 (7th Cir. 1998) (*en banc*), *cert. denied,* 525 U.S. 1066 (1999)). Rather, the inquiry turns "not only on proximity to the house but also on the *use of the area and efforts to shield* it from public view and access as well as the nature for which it is used." *Id.* (emphasis in original).

Finally, although not mentioned by the Ohio Court of Appeals, the Fourth Amendment does not extend to require police officers engaged in legitimate law enforcement activities near a person's home to "shield their eyes." *See Dunn,* 480 U.S. at 304 (and cases cited therein); *cf. California v. Greenwood,* 486 U.S. 35, 41 (1988) ("the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public"). Items observed in plain view by a police officer conducting a limited intrusion on a person's property for legitimate law enforcement purposes do not trigger Fourth Amendment concerns. *See, e.g., United States v. Raines,* 243 F.3d 419, 421-22 (8th Cir.) (no Fourth Amendment violation occurred when a police officer, who lawfully entered the curtilage of the defendant's home for the purpose of serving a person he had reason to believe was located at the residence with civil process, observed marijuana plants growing in "plain view"), *cert. denied,*

532 U.S. 1073 (2001).[8]

---

[8] *Cf. French,* 291 F.3d at 951-54 (affirming denial of motion to suppress in case where a probation officer, looking for a delinquent probationer, observed evidence of a methamphetamine lab on the defendant's property from a gravel walkway and driveway abutting the home); *see also United States v. Reyes,* 283 F.3d 446, 465-70 (2nd Cir.), *cert. denied,* 537

12

In this case, there is more than enough evidence in the record to satisfy the undersigned that petitioner is unable to demonstrate under the "prejudice" prong of the *Strickland* test that a reasonable probability exists that the result of his trial would have been different if counsel had filed a suppression motion.

First, upon review of the record, the undersigned is convinced that any suppression motion raising a Fourth Amendment claim would have been denied as meritless. *See Kimmelman,* 477 U.S. at 375. The Ohio Court of Appeals reasonably determined in a footnote that the incriminating evidence of a "meth lab" found in the wooded area behind petitioner's trailer did not fall within the curtilage of the home, and thus did not trigger Fourth Amendment concerns. *See supra* p. 8 n.7. The only arguable issue raised by the state appellate court involved the blue trash barrel containing the propane tank with the altered valve that was observed near the horseshoe pit.

Under the *Dunn* four-factor test, the undersigned concedes, as the Ohio Court of Appeals found, that the evidence adduced at trial was too "scant" and "imprecise" to determine the exact proximity of the trash barrel to petitioner's residence. However, the evidence pertaining to the three other *Dunn* factors weighs heavily in favor of finding that the barrel was not located in an area so intimately tied to petitioner's home that it must be considered part of the curtilage subject to Fourth Amendment protection.

Specifically, evidence was adduced at trial that the area in which the barrel was located was not enclosed or otherwise protected from observation by passers-by, and indeed, that the barrel was intended for public use. Detective Daniel Croy, who apparently was the first police officer at the scene to notice the propane tank in the trash barrel, testified that the barrel "butted up" to the woods at the edge of the property, and that there was a path near it, which led into the wooded area, that was "worn clear to the dirt." (Tr. 155, 161, 163). Petitioner himself further testified that people parked on his property "all the time" to fish at the creek and hike in the woods, that many people used the horseshoe pit located near his trailer, and that he had placed the blue trash barrel near the horseshoe pit so that people

---

U.S. 822 (2002).

would not "throw trash in the yard." (Tr. 257-61, 285).[9]

Moreover, even assuming, *arguendo,* that the trash barrel arguably could be found to fall within the curtilage of petitioner's residence, the challenged evidence was observed in plain view by police officers in conjunction with their legitimate law enforcement activities. The officers all testified that they entered petitioner's property for the sole purpose of apprehending Craig Dawson, who was the subject of an outstanding arrest warrant and had been evading the police for two weeks, and whose car was observed by the officers parked in a wooded area behind petitioner's trailer home. (Tr. 91-92, 95-98, 150-54, 180, 207-08, 214). The officers, who "detect[ed] a strong odor of ether" which was "getting stronger and stronger" as they approached petitioner's trailer, first knocked on petitioner's door. (Tr. 95-96, 98, 152-54).

When no one responded from within the trailer, the police secured the residence and proceeded in their search of Dawson upon hearing people's voices in the woods, which was accessed by way of a path "in the area of this barrel." (Tr. 96, 116, 154-57, 208).[10] Detective Croy testified that he noticed the tank protruding from the barrel in plain view when he moved to the side of the trailer after knocking and receiving no response from within; he said he was standing there "listening and just looking" around when the tank "caught [his] eye." (Tr. 154-55, 161).

Under these circumstances, indicating that it was reasonable for the police officers to continue their encroachment onto petitioner's property and into the wooded area in search of Dawson and any others engaged in the probable illegal drug manufacturing activity that apparently was taking place in the woods, the

---

[9] *Cf. United States v. Cousins,* 455 F.3d 1116, 1122-24(10th Cir.), *cert. denied,* 127 S.Ct. 162, 706 (2006) (holding that the defendant's "sideyard," which was enclosed on three sides and accessed by a walkway that was "frequented by a meter reader," did not fall within the curtilage of his home); *United States v. Thompson,* 139 Fed.Appx. 724, 729-30 (7th Cir. July 12, 2005) (not published in Federal Reporter) (rejecting defendant's curtilage argument in absence of any evidence presented by defendant that he had a legitimate expectation of privacy in a burn pile or in a bus and trailer unshielded from public view, which were located within a fifty-foot proximity to his house).

[10] According to testimony elicited at trial, the police also had a "drug smelling dog" with them that "was on the track of someone running in the woods." (Tr. 158, 196, 211).

actions of the police did not violate petitioner's Fourth Amendment rights. *Cf. United States v. Hopper*, 58 Fed.Appx. 619, 623-24 (6th Cir. Jan. 21, 2003) (not published in Federal Reporter) (finding that "even if Appellant's curtilage had enjoyed constitutional protection, the actions of the police . . . would not have violated the Fourth Amendment because law enforcement officials may encroach upon the curtilage of a home for the purpose of asking questions of the occupants"), *cert. denied,* 540 U.S. 928 (2003).

Indeed, in one case discussing *Dunn*'s curtilage factors based on a factual scenario analogous to the case-at-hand, a district court reasoned:

> Often, law enforcement officers will obtain additional information as they approach the property or structure in question. Good examples are the strengthening odor of marijuana, an absence of human activity, or an absence of lighting. As the level of objective data indicating that a particular piece of property is being used for illegitimate purposes increases, the curtilage recedes before the advancing officers. This produces the notion that curtilage is never fixed, rather it has elastic properties and may stretch or contract based on the amount of objective information possessed by the law enforcement officers. . . .

*United States v. Shates,* 915 F.Supp. 1483, 1498 (N.D. Cal. 1995). Only "[i]f there are any questions about the legitimacy of that advancement," does it become "an issue for the courts to resolve." *Id.*

In this case, it is evident from the record that the police officers obtained a significant amount of information as they approached petitioner's property in search of Dawson, which justified their further advancement onto petitioner's property after they knocked on petitioner's trailer door and heard no response from within. Not only did they have information indicating that Dawson was nearby to be served with an arrest warrant, they heard voices in the woods and detected a strong odor of ether, a methamphetamine reagent, which indicated that methamphetamine was being manufactured at that very moment in the wooded area abutting and accessible from petitioner's property. *Cf. id.* at 1498-99.

In sum, the evidence adduced at trial conclusively establishes that petitioner had no reasonable expectation of privacy in the trash barrel located near his trailer at the edge of the woods, which in any event, was not an item subject to Fourth

Amendment protection to the extent it was observed by police officers who were advancing on petitioner's property for legitimate law enforcement purposes. Therefore, petitioner is unable to demonstrate that his Fourth Amendment claim is meritorious in accordance with *Kimmelman,* 477 U.S. at 375, and thus that his counsel's alleged error in failing to file a motion to suppress prejudiced the defense as required under the second prong of the *Strickland* test.

Second, even if, as the Ohio Court of Appeals found, "enough red flags exist in this case to [have] warranted the filing of a motion to suppress," petitioner has not shown that "there is a reasonable probability that the verdict would have been different absent the excludable evidence." *See Kimmelman,* 477 U.S. at 375. As discussed and noted above, *see supra* p. 8 & n.7, the only evidence arguably falling within the curtilage of petitioner's residence was the trash barrel containing the altered propane tank that was located near the horseshoe pit and path leading into the woods from petitioner's trailer. At trial, however, other evidence of a "meth lab" was introduced, based on "several items" commonly used in the production of methamphetamine that the police discovered as they continued their pursuit into the woods; these items included a tank lodged against a tree wrapped in a "mesh type of camouflaged sheeting" containing anhydrous ammonia, a methamphetamine reagent, as well as a "[g]lass container three-quarters full of ether and ephedrine," and a "plastic container full of acid." (*See* Tr. 156-58, 164-67, 172-180, 210-12).

In addition to this evidence, which was found in a dry creek bed soaked with ether and on an embankment in the woods before the area was secured and a search warrant was obtained, the following evidence was introduced connecting petitioner to the methamphetamine manufacturing operation: petitioner, who had resided on the property for four to six years, had obtained a mortgage on the five acre lot, "including all the trailers," where the evidence of a "meth lab" was found; a piece of netting was seized from the trunk of petitioner's car, which matched "perfectly every little cut and mark" like a puzzle piece with the cloth used to camouflage the tank containing anhydrous ammonia that was discovered by the police in the woods; and "ether cans" with "holes in the bottom of them" were found in a trash bag retrieved during the search of an abandoned van parked close to petitioner's trailer. (Tr. 111-12, 129-33, 140, 188, 193-94, 199-200, 209-10, 229-34).

In light of this substantial evidence of guilt that was properly introduced at petitioner's trial, petitioner is unable demonstrate that the outcome of his trial

16

would "reasonably likely been different" if his counsel had successfully moved to suppress the evidence of the altered propane tank that was discovered in the trash barrel near petitioner's mobile home.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the ineffective assistance of counsel claims alleged in the petition, because the Ohio Court of Appeals' adjudication of these claims on direct appeal neither is contrary to nor involves an unreasonable application of the applicable standard of review clearly established by the Supreme Court in *Strickland* and *Kimmelman*, and is based on a reasonable determination of the facts in light of the record evidence. Indeed, although the Ohio Court of Appeals expressed some concern about the adequacy of the record in addressing petitioner's claim stemming from counsel's failure to file a suppression motion for a violation of petitioner's Fourth Amendment rights, the undersigned concludes that the record was sufficiently developed to conclusively establish that petitioner's Fourth Amendment claim is meritless and that the result of petitioner's trial would not reasonably likely have been different absent the alleged error.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should issue, because petitioner's claim that his Sixth Amendment right to the effective assistance of counsel was violated when defense counsel failed to file a motion to suppress evidence under the Fourth Amendment relief is a "viable claim of the denial of a constitutional right" or is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). With respect to petitioner's remaining ineffective assistance of trial counsel claim stemming from the admission of "other acts" evidence, a certificate of appealability should be denied.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in

"good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 6/20/07                                           s/Timothy S. Black
    cbc                                                           Timothy S. Black
                                                         United States Magistrate Judge

J:\BRYANCC\2007 habeas orders\06-53denypet.iac-4thA-otheracts.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Danny Morrison,
    Petitioner,

    v.

Terry J. Collins, Director of the Ohio Dep't
of Rehabilitation & Corrections, et al.,
    Respondents.

Case No. 1:06cv53
(Spiegel, S.J.; Black, M.J.)

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).